```
                  IN THE UNITED STATES DISTRICT COURT
                      FOR THE DISTRICT OF MARYLAND


BRIAN PETERSON                   *
                                 *
v.                               *    Civil Action No. WMN-13-03812
                                 *
NORTHROP GRUMMAN SYSTEMS         *
CORPORATION, et al.              *
                                 *
   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *
```

**MEMORANDUM**

Pending before the Court are various motions to dismiss. Specifically, Defendant Northrop Grumman Systems Corporation (Northrop Grumman) filed a motion to dismiss Count I of the Amended Complaint, ECF No. 24, and Defendant Salaried Employees Association (SEA) filed a motion to dismiss Count III of the Amended Complaint, ECF No. 23.  The Court determines that no hearing is necessary, Local Rule 105.6 and for the reasons stated herein, both motions will be GRANTED.

I.   **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Brian Peterson (Peterson) filed this case against Northrop Grumman and SEA for employment discrimination based on sex, race, and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et. seq., 42 U.S.C. § 1981, and the National Labor Relations Act (NLRA), 29 U.S.C. § 158. Peterson is an African-American male who was employed at Northrop Grumman from 1985 to 1996, and again from 1998 until

March 13, 2012. Until 2011, he progressed in employment, gaining top secret clearance and other necessary experiences to qualify him for positions that became available.

During the time at issue, Peterson worked in the Sensors and Systems Division in the Advanced Technical Laboratory. He was a top secret clearance employee who provided back up support and coverage for understaffed areas. The manager of his group, the Mission Assurance H-Module, was Gary Tichnell (Tichnell).

Peterson was also a dues paying member of SEA from 2005 onward. In 2009, he was elected to be an SEA Union Representative. He served in that capacity until his dismissal in 2013. As Union Representative, Peterson requested a review of overtime assignments within his group for the first half of 2011. The resulting investigation showed that a female Caucasian co-worker, Donna Crum, received 441 hours of overtime while the remaining ten male workers in the department received 272 hours combined.

Peterson alleges that because of his investigation request and his sex and gender, the following adverse employment actions occurred:

   (1) Peterson was excluded from silicon carbide wafer training that all other members – Caucasian - of Assurance H-Module received. This training was a prerequisite for certain employment and overtime

        opportunities, from which Peterson could not benefit because Tichnell refused to offer training.

(2) In July, 2011, Tichnell, counter to usual practice with Caucasian and female employees, failed to respond to Peterson's request to participate in a class through Northrop Grumman's Education Reimbursement Program until the class's second-to-last day.

(3) Northrop Grumman failed to investigate Peterson's September 13, 2011, report that three coworkers – Ed Deltuva, Dudley Crum, and Donna Crum – had broken into his locker to steal his notes of union violations.

Following these incidents, Plaintiff filed a complaint with the National Labor Relations Board ("NLRB") as well as with Jim O'Hair, a Northrop Grumman Executive. Peterson was eventually referred to the Human Resources Director, but no further action was taken.

In addition, as part of his union duties, Peterson was asked to track instances of professional salaried employees performing union jobs. On September 19, 2011, Peterson reported that Allen Mumford, a professional employee, was working a union job assigned to Ed Deltuva. Peterson also reported a violation of SEA policy when a junior union member – the SEA President's son - was promoted over three senior engineers. As a result of his reports to SEA, Northrop Grumman, and the NLRB, Peterson

alleges that he has been subjected to isolation and harassment by co-workers and supervisors.

On February 28, 2012, Northrop Grumman indefinitely suspended Peterson for engaging in misconduct. Shortly after, the suspension was converted to termination. Peterson requested a "Last Chance" letter through SEA, but that request was rejected on the ground that a Level 3 accusation was lodged. Peterson alleges that other employees had their "Last Chance" letters accepted, and notwithstanding acceptance, that the Level 3 accusation was retaliation for his reporting activities.

Upon termination, Peterson filed a charge with the Equal Employment Opportunity Commission (EEOC). Peterson states that his claim with the EEOC was on grounds of race and gender discrimination as well as retaliation for protected activity.

The EEOC charge sheet provided by Northrop Grumman has the "Retaliation" box checked along with a note to "See enclosed copy of charge of discrimination." ECF No. 24-1. Neither Northrop Grumman nor Peterson has provided additional documentation to further explain the charge sheet.

Peterson received his right to sue letter on September 20, 2013. He then filed his original complaint on December 18, 2013, and SEA moved to dismiss Peterson's Title VII and NLRA claims. In response, Peterson filed an amended complaint on May 26, 2014, alleging Title VII claims of sex and gender

discrimination and retaliation against Northrop Grumman (Counts I and II), and § 1981 claims against both Northrop Grumman and SEA (Count III).

**II.  LEGAL STANDARD**

Defendant Northrop Grumman's motion is properly brought under Fed. R. Civ. P. 12(b)(1), in that a Title VII plaintiff's failure to exhaust administrative remedies deprives the federal court of subject matter jurisdiction over such claims. Jones v. Calvert Group, Ltd., 551 F.3d 297, 300-01 & n. 2 (4th Cir. 2009).  The plaintiff always bears the burden of demonstrating that subject matter jurisdiction properly exists in federal court.  See Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp., 166 F.3d 642, 647 (4th Cir. 1999).  Dismissal for lack of subject matter jurisdiction is appropriate "only if the material jurisdictional facts are not in dispute" and the defendant is "entitled to prevail as a matter of law."  Id.  In its analysis, the court should "regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment."  Evans, 166 F.3d at 647.

Defendant SEA's motion is governed by Fed. R. Civ. P. 12(b)(6).  In evaluating a motion to dismiss filed pursuant to Rule 12(b)(6), the Court must accept as true all well-pled allegations of the complaint and construe the facts and

reasonable inferences derived therefrom in the light most favorable to the plaintiff. See Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997). To survive dismissal, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic v. Twombly, 550 U.S. 554, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). A court need not accept a plaintiff's legal conclusions as true, as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Thus, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679.

### III. ANALYSIS

#### A. Northrop Grumman's Motion to Dismiss

Defendant Northrop Grumman seeks dismissal of Count I of the Amended Complaint, which asserts that Northrop Grumman discriminated against Peterson on account of his race and sex. Northrop Grumman avers that this Court lacks jurisdiction over

Peterson's race and sex discrimination claim because Peterson's EEOC Notice of Charge of Discrimination marks "Retaliation" as the circumstance of discrimination, and not "Race" or "Sex," and thus Peterson failed to exhaust his administrative remedies as to claims of race or sex discrimination.

Title VII requires a plaintiff to file a charge of discrimination with the EEOC prior to filing suit in federal court.  <u>Jones</u>, 551 F.3d at 300-01.  Furthermore, the scope of the civil action is confined to "those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation [of that complaint]."  <u>Id.</u>  Case law in the Fourth Circuit "make[s] clear that the factual allegations made in formal litigation must correspond to those set forth in the administrative charge.  For example, the plaintiff's claim generally will be barred if his charge alleges discrimination on one basis – such as race – and he introduces another basis in formal litigation – such as sex." <u>Chacko v. Patuxent Inst.</u>, 429 F.3d 505, 509 (4th Cir. 2005).

From the evidence provided, Peterson's claim of sex and race discrimination is barred because of his failure to include them in the EEOC charge.  The charge sheet is only marked as a retaliation claim.  ECF No. 24-2.  Plaintiff's unsubstantiated claims that he filed a complaint on grounds of race and sex

discrimination and that the lack of check marks on the charge sheet was "in error or was later clarified and expanded" are insufficient without further evidence.  In addition, Plaintiff has declined to provide the narrative portion of the charge that would potentially mention race or sex discrimination sufficient to provide Northrop Grumman notice of these claims.  See Bryant v. Bell Atlantic Maryland, Inc., 288 F.3d 124, 132 (4th Cir. 2002) ("The EEOC charge defines the scope of the plaintiff's right to institute a civil suit.").

In the absence of further evidence concerning the EEOC charge sheet, the Court can only conclude that Peterson filed his claim with the EEOC on the ground of retaliation for engaging in protected activities, thus limiting his claim in this Court to retaliation.  Thus, Peterson failed to exhaust his administrative remedies as to claims of sex or gender discrimination.  Defendant Northrop Grumman's partial motion to dismiss Count I of the Amended Complaint will be granted.

**B. SEA's Motion to Dismiss**

Defendant SEA seeks dismissal of Count III of the Amended Complaint, which asserts that SEA unlawfully interfered with Peterson's employment relationship with Northrop Grumman on

account of his race and sex in violation of 42 U.S.C. § 1981.[1] SEA asserts that Peterson has failed to plead with particularity facts giving rise to an interference claim under § 1981.

The Court concludes that, even when construed in Plaintiff's favor, the Amended Complaint fails to produce sufficient facts on which to state a claim against SEA. Peterson must allege facts that tend to show "(1) he or she is a member of a racial minority; (2) the defendant intended to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities protected by the statute." Baltimore-Clark v. Kinko's, Inc., 270 F. Supp. 2d 695, 699 (D. Md. 2003). Although there is neither a heightened pleading standard, nor requirement to establish a prima facie case of discrimination, Swierkiewicz v. Sorema, 534 U.S. 506, 510-11 (2002), a plaintiff still carries the burden of alleging facts sufficient to state all elements of his claim. See Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002) ("The Supreme Court's holding in Swierkiewicz v. Sorema did not alter the basic pleading requirements that a plaintiff set forth facts sufficient to allege each element of his claim.").

Plaintiff does not carry his burden with respect to SEA.

---

[1] SEA correctly notes that 42 U.S.C. § 1981 protects only against race discrimination and not sex discrimination as alleged. See Duane v. Government Employees Ins. Co., 784 F. Supp. 1209, 1216 (1992) ("[N]othing in the language or history of (§ 1981) addresses discrimination on the basis of . . . sex.")

In the whole of his complaint, Plaintiff describes three SEA actions: SEA submitted Peterson's "Last Chance" request to Northrop Grumman, SEA failed to file grievances or advocate on behalf of Peterson, and SEA failed to fairly represent Plaintiff and his claims of disparate treatment.  While Peterson includes specific factual occurrences with respect to Northrop Grumman, SEA's appearance in the complaint is mostly limited to these general references.

Plaintiff's allegations against SEA closely mirror the allegations made in Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761 (4th Cir. 2003).  There, the Fourth Circuit found that the allegation that "[p]laintiff, an African American female was consistently paid less than and consistently did not advance as fast as similarly situated white men" was insufficient to support plaintiff's claim of gender, race, or sex discrimination.  Id. at 765.  The court also found that her allegations were merely supported "with a story of a workplace dispute . . . and some callous behavior by her superiors" that did "not seem to have anything to do with gender, race, or age harassment."  Id.

Here, Peterson fails to even describe a particular "workplace dispute" or "callous behavior" by the SEA, much less facts that are plausibly connected to Peterson's claim that SEA's actions were "because of Plaintiff's race."  And while

Peterson claims that the Amended Complaint "made reference to specific acts, practices, procedures, or failures to act in support of his claims," ECF No. 31 at 11, the Court finds that there are no specific facts alleged that could support a claim against SEA.

As plead by Peterson, SEA's involvement in his termination was limited to requesting the "Last Chance" letter.  To say simply that SEA "failed to file grievances" and "fairly represent Plaintiff to address his claims" does not sufficiently support a conclusion that Peterson, as an African American union member, was treated differently than a Caucasian union member during the grievance process.  While Peterson may not like the way SEA handled his grievances, there is no suggestion that SEA intended to discriminate against him on account of his race.  By and large, Peterson's references to SEA in his § 1981 claim constitute the "threadbare recitals" and "conclusory allegations" that fail a 12(b)(6) motion.

However, since SEA failed to raise this issue in its first motion to dismiss, the Court will give Peterson the opportunity to amend his complaint as to SEA and Count III within fourteen days of this Order.  The Court will again emphasize that "general allegations of differential treatment must be substantiated by 'accounts of specific dates, times, or circumstances.'"  Cepada v. Board of Educ. Of Baltimore City,

974 F. Supp. 772, 784 (D. Md. 2013).

**IV.  CONCLUSION**

For the foregoing reasons, Defendants' Partial Motions to Dismiss will be granted, and within fourteen days of the Order, Plaintiff may amend Count III of his complaint as to SEA.  A separate Order will issue.

```
                         _____/s/_____
                         William M. Nickerson
                         Senior United States District Judge
```

DATED:    September 15, 2014