IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

BRIAN PETERSON                      *
                                    *
    Plaintiff                       *
v.                                  *
                                    *   Civil Action No. WMN-13-3812
NORTHROP GRUMMAN SYSTEMS            *
CORPORATION                         *
                                    *
    Defendant                       *
* * * * * * * * * * * * * * *

**MEMORANDUM**

Before the Court is Defendant's Motion for Summary Judgment. ECF No. 51. The motion is ripe.[1] Upon a review of the pleadings and the applicable case law, the Court determines that no hearing is necessary, Local Rule 105.6, and that Defendant's motion will be granted.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

In the remaining counts before the Court, Plaintiff Brian Peterson charges Defendant Northrop Grumman Systems Corporation with retaliation in violation of Title VII of the Civil Rights

---

[1] Defendant's Motion for Summary Judgment was filed on July 13, 2015. ECF No. 51. Plaintiff missed the July 30, 2015, deadline to file a response. On August 10, 2015, Plaintiff received a thirty day extension of time, moving the deadline to submit a response to September 8, 2015. ECF No. 52. Plaintiff missed the September 8, 2015, deadline and did not file a response until September 11, 2015. ECF No. 54. Plaintiff's Response was incomplete, and an additional memorandum in support was filed on September 17, 2015. ECF No. 55. Due to Plaintiff's delay, the Court continued the trial and granted Defendant an extension of time to reply. ECF No. 57. Defendant timely filed a reply on October 15, 2015. ECF No. 59.

Act of 1964 (Title VII), 42 U.S.C. §§ 2000e, et seq., and racial discrimination in violation of 42 U.S.C. § 1981 (Section 1981).[2] ECF No. 37 at 2.  Plaintiff is an African-American male who was employed by Defendant from 1983-1996, and again from 1998-2012.  Plaintiff worked as a Lab Inspector in the Sensors and Systems Division of the Advanced Technical Laboratory from 2005 until his dismissal on March 13, 2012.  The manager of his group, the Mission Assurance H-Module, was Gary Tichnell.

From 2009 until his dismissal, Plaintiff served as a Salaried Employees Association (SEA)[3] Union Representative for Defendant's employees in District 4, Group 1.  As Union Representative, Plaintiff requested a review of overtime assignments within his group for the first half of 2011.  The resulting investigation showed that Donna Crum received 441 hours of overtime while the remaining ten workers in the department received 272 hours combined.  On September 27, 2011, Plaintiff filed a charge with the National Labor Relations Board (NLRB) against the Union for failing to address the unequal distribution of overtime hours.

---

[2] Plaintiff's charge brought under the National Labor Relations Act, 29 U.S.C. § 158, was dropped, ECF No. 21, and his Title VII claims related to race and sex discrimination were dismissed. ECF No. 35.  Defendant Salaried Employees Association was dismissed from the case.  ECF No. 45.

[3] SEA was the exclusive bargaining representative for Defendant's employees in regards to the terms and conditions of their employment.

In addition to complaining about overtime, Plaintiff reported to management that Tichnell excluded him from silicon carbide wafer training and failed to respond to his request for education assistance. On September 28, 2011, Plaintiff met with Jim O'Hair, Employee Assistance Program Coordinator, to discuss his issues with Tichnell and his NLRB charge. O'Hair sent Plaintiff to Kevin Wilson, Director of Equal Employment Opportunity (EEO) and Diversity, who recommended he talk to Amanda Henderson, Manager of Labor Relations. After speaking with Henderson, Plaintiff notified O'Hair that his issues were being addressed and that he was satisfied. Plaintiff's NLRB charge was subsequently withdrawn and no further action was taken.

Action was taken after Plaintiff engaged in an altercation with co-worker Deltuva on February 28, 2012. Deltuva claimed he was standing by his locker when Plaintiff confronted him, speaking in a physically threatening manner. ECF No. 51-6 at 11. Deltuva complained to Tichnell about the altercation and prepared a written statement which indicated that Plaintiff "asked if [Deltuva] had a problem with him" and said "if you do we can go outside" and "if I hit you, I will kill you." Id.

On the day of the altercation, Plaintiff was indefinitely suspended for violating Plant Rule #5, Misconduct. ECF No. 54-15 at 2. On March 13, 2012, the suspension was converted to a

permanent dismissal. Id. On June 1, 2012, Plaintiff filed a charge for discrimination based on retaliation with the Equal Employment Opportunity Commission (EEOC). ECF No. 13-1. Plaintiff received a Dismissal and Notice of Rights letter from the EEOC on September 20, 2013. ECF No. 1-2. Plaintiff filed his original complaint in this Court on December 18, 2013. Defendant now moves for summary judgment on Plaintiff's two remaining claims.

**II. LEGAL STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). This standard requires the court to "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded particular evidence." Masson v. New Yorker Magazine, 501 U.S. 496, 520 (1991) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Id. at 252. "Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

## III. DISCUSSION

Plaintiff has not offered direct evidence of discrimination, therefore, in order to prevail on his Title VII and Section 1981 claims, Plaintiff must rely on the indirect burden-shifting framework from McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). "First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination." Tex. Dept. Cmty. Affairs v. Burdine, 450 U.S. 248, 248 (1981). Second, if the plaintiff establishes a prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." McDonnell-Douglas, 411 U.S. at 802. "[T]hird, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Burdine, 450 U.S. at 248.

### A. Title VII Retaliation Claim

Defendant seeks summary judgment on Plaintiff's Title VII retaliation claim on the grounds that 1) Plaintiff fails to establish a prima facie case of retaliation and 2) Plaintiff fails to carry his burden to prove, by a preponderance of the evidence, that Defendant's proffered reason for Plaintiff's termination was pretextual. ECF No. 51-2.

5

### 1. **Prima Facie** Case

To establish a prima facie case of retaliation under Title VII, a plaintiff must show (1) he engaged in protected activity; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse action. Carter v. Ball, 33 F.3d 450, 460 (4th Cir. 1994).

Protected activities fall into two categories: participation and opposition. Section 704(a) limits activities that constitute participation to (1) making a charge; (2) testifying; (3) assisting; or (4) participating in any manner in an investigation, proceeding, or hearing under Title VII. 42 U.S.C. § 2000e-3(a). Plaintiff's conduct does not fall within the scope of the participation clause because he did not file an EEOC charge until after he was terminated nor did he assist with any EEOC charge, investigation, proceeding, or hearing during his employment. Accordingly, the Court will examine whether Plaintiff's activities are protected by the opposition clause.

The opposition clause of Section 704(a) protects employees who oppose "any practice made an unlawful employment practice" through Title VII. 42 U.S.C. § 2000e-3(a). "Title VII defines the term 'unlawful employment practice' as discrimination on the basis of any of seven prohibited criteria: race, color, religion, sex, national origin, opposition to employment

6

discrimination, and submitting or supporting a complaint about employment discrimination." Univ. of Texas Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2532 (2013).

Plaintiff claims he was terminated in retaliation for making complaints in 2011 about discriminatory treatment. On August 11, 2011, Plaintiff wrote an email to William Frye regarding inequality in overtime hours, stating "[w]e have to find a solution to this segregated problem. If this is not a discrimination case than I must be blind." ECF No. 54-12 at 73. Plaintiff also sent an email to Janet Bart stating "we continue to be behind on diversity representation in our management ranks, particularly for people of color." ECF No. 54-6 at 3. Plaintiff's communications with Frye and Bart fall within the opposition clause because Plaintiff opposed discrimination based on race which is an unlawful employment practice under Title VII.

In addition, in September of 2011, Plaintiff filed a complaint with Jim O'Hair, Employee Assistance Program Coordinator. ECF No. 54-4 at 6. Plaintiff alleges he complained of discrimination based on race to O'Hair, who then referred him to Kevin Wilson, Defendant's Director of EEO and Diversity, to deal with the discrimination issue. Id. Although there is no direct evidence that Plaintiff complained of discrimination based on race in these conversations, the Court

can draw reasonable inferences from Plaintiff's use of informal grievance procedures, especially his referral to Wilson.

"The opposition clause has been held to encompass informal protests, such as voicing complaints to employers or using an employer's grievance procedures," Armstrong v. Index Journal, 647 F.2d 441, 448 (4th Cir. 1981), consequently, Plaintiff engaged in protected activity under Section 704(a). Plaintiff suffered an adverse employment action when he was terminated from employment, thus, the Court finds Plaintiff satisfies the first and second prong of the prima facie framework.

Defendant claims Plaintiff's prima facie case fails at the third prong because he cannot establish a causal connection between the protected activity and the adverse employment action. In Nassar, the Supreme Court concluded that "Title VII retaliation claims must be proved according to traditional principles of but-for causation"... requiring "proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." 133 S. Ct. at 2533. The Court agrees with Defendant that Plaintiff fails to establish that connection.

First, Plaintiff provided the NLRB with a Confidential Witness Affidavit, in which he stated under penalty of perjury that "[m]y suspension on February 28, 2012 and my subsequent termination on March 13, 2012 stem from an incident that

8

involved my coworker Ed Deltuva." ECF No. 51-3 at 61. Second, in the same affidavit, Plaintiff stated "I believe the real reason the Employer terminated me was because it was retaliating against me for filing Charge 05-CB-065652 with the National Labor Relations Board on or about September 27, 2011." Id. at 63. There is no evidence before the Court that Plaintiff's NLRB charge mentioned race discrimination. Based on Plaintiff's own admissions, retaliation for opposition to racial discrimination was not the but-for cause of Plaintiff's termination.

In addition, there is no evidence that the relevant decision-makers, Tichnell and Henderson, were aware of Plaintiff's complaints of racial discrimination. The Fourth Circuit has stated that "[s]ince, by definition, an employer cannot take action because of a factor of which it is unaware, the employer's knowledge that the plaintiff engaged in a protected activity is absolutely necessary to establish the third element of the prima facie case." Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998). Henderson definitively stated she was not "aware that Plaintiff made a complaint of racial [] discrimination, or that Plaintiff claimed that any allegedly unequal treatment related to overtime, training, education assistance or otherwise was allegedly a result of racial [] discrimination" until after Plaintiff was terminated. ECF No. 51-5 at 3. Tichnell, when

asked during deposition "[d]o you recall whether or not [Plaintiff] was also complaining about being treated differently because he's a man or being treated differently because he is African-American," replied "[n]o, I do not." ECF No. 51-4 at 20. Because the relevant decision-makers were not aware that Plaintiff engaged in protected activities, a reasonable jury could not conclude that a causal connection exists between a protected activity and Plaintiff's termination. Accordingly, Plaintiff fails to establish a prima facie case of retaliation under Title VII.

**2. Legitimate Nondiscriminatory Reason**

Even if Plaintiff established a prima facie case of retaliation, Defendant articulated a legitimate, nondiscriminatory reason for terminating Plaintiff, i.e., his violation of the Workplace Violence Prevention and Response Policy (Workplace Violence Policy), ECF No. 59-3 at 7, and violation of Plant Rule #5, Misconduct. ECF No 54-15 at 2. Violation of a company policy is a legitimate reason for terminating an employee. Brantley v. Nationwide Mut. Ins. Co., No. RDB-07-1322, 2008 U.S. Dist. LEXIS 56083, at *37 (D. Md. July 22, 2008).

**3. Pretext for Retaliation**

Under McDonnell-Douglas, once the defendant presents a legitimate, nondiscriminatory reason for termination, the burden

shifts back to the plaintiff "to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Burdine, 450 U.S. at 253.  Plaintiff attempts to cast doubt on Defendant's proffered reason for termination by comparing the severity of the action taken against him to the treatment other employees received for violating Defendant's policies.

Plaintiff points to the deposition of co-worker Dennis Wilderson Sr., who said another employee, John Miller, was not terminated for engaging in conduct vaguely delineated as fighting and quarreling.  ECF No. 55 at 7.  Defendant points out that according to Wilderson, the altercation in which Miller was involved likely arose before January 13, 2010, the date Defendant adopted the zero tolerance Workplace Violence Policy. Next, Plaintiff attempts to show pretext by comparing the actions taken against him to actions taken by Defendant in response to employee conduct such as computer violations, name calling, and off-color joking.  ECF No. 54 at 23-24.  The difference in discipline for these violations is not enough to show pretext because the Workplace Violence Policy only applies to "acts, or threats of violence in the workplace."  ECF No. 59-3 at 7.  In light of these facts and Plaintiff's admission during deposition that "as an employee, [he] understood that

11

committing or threatening any act of violence against another employee would result in termination," ECF No 51-3 at 33, Plaintiff fails to show the reason offered by Defendant for his termination was pretext for retaliation.

**B. Section 1981 Racial Discrimination Claim**

Plaintiff claims Defendant discriminated against him in the terms and conditions of employment based on his race, African-American, in violation of Section 1981.[4] In order to establish a prima facie case of racial discrimination under Section 1981, a plaintiff must show "1) membership in a protected class; 2) satisfactory job performance; 3) adverse employment action [taken because of his race]; and 4) that similarly situated employees outside the protected class received more favorable treatment." White v. BFI Waster Serv., LLC, 375 F.3d 288, 295 (4th Cir. 2004). Defendant concedes Plaintiff is a member of a protected class and that his job performance was satisfactory. Defendant challenges Plaintiff's prima facie case as to prongs three and four, maintaining it did not take adverse employment actions against him on the basis of race or give more favorable treatment to employees outside of his protected class.

An adverse employment action is a discriminatory act which adversely affects "compensation, terms, conditions, or

---

[4] To the extent Plaintiff's Section 1981 claim is based on retaliation, the analysis is the same as that under Title VII.

12

privileges of employment." 42 U.S.C. § 2000e-2(a)(1). "Adverse employment action" has been narrowly defined, and does not include every decision made by an employer that arguably might have some tangential effect upon ultimate decisions. See Page v. Bolger, 645 F.2d 227, 233 (4th Cir. 1981) (en banc) (noting discrimination cases have focused upon ultimate employment decisions such as hiring, granting leave, discharging, promoting, and compensating). Suspension and termination are ultimate employment decisions; however, Plaintiff's Section 1981 claim fails to the extent it is based on those decisions due to his admission that he was not terminated on the basis of race.[5] See ECF No. 51-3 at 38 ("Q. Do you allege you were terminated because of your race? A. I wasn't terminated because of my race.").

Plaintiff's remaining allegations concerning adverse employment actions taken by Defendant fall into three categories: disparate treatment in assignment of training, education assistance, and overtime hours. Id. The record shows that Plaintiff was not denied training or education assistance but rather did not receive these employment benefits as quickly as he would have liked. Plaintiff claims he was discriminated

---

[5] This claim also fails for the reasons given in the Court's analysis of Plaintiff's Title VII claim, namely, that Plaintiff did not carry his burden to prove by a preponderance of the evidence that the reason offered by Defendant for Plaintiff's termination was pretext for discrimination.

13

against in training for silicon carbide wafer testing and the Phoenix program. Plaintiff admits that he was trained on silicon carbide wafer testing by October 20, 2011. ECF No. 59-1 at 24. Defendant states that it began to train Plaintiff to work with the Phoenix program by assigning him to shadow with another individual. ECF No. 54-13 at 13-14.

In addition, Plaintiff attended college part time through education assistance from Defendant, acquiring 30 credits before his termination. ECF No. 54 at 2. Plaintiff's request for education assistance in July of 2011 may have been delayed for two weeks but ultimately yielded approval on August 17, 2011. ECF No. 51-4 at 17. Henderson testified that Plaintiff could have paid to take the course upfront and then filed for reimbursement. ECF No. 51-5 at 3. Delay by an employer in training and educational advancement is no more than an "interlocutory or mediate decision having no immediate effect upon employment conditions," and therefore, does not constitute a legally cognizable adverse employment action. Page, 645 F.2d at 233.

Plaintiff additionally claims he was denied overtime hours on the basis of race. Depriving an employee of "compensation which he otherwise would have earned" constitutes an adverse employment action. See Shannon v. Bellsouth Telecomm. Inc., 292 F.3d 712, 716 (11th Cir. 2002) (finding adverse employment

14

action when, among other things, the plaintiff was "totally blackballed from overtime"). Plaintiff claims that receipt of overtime hours was a term and condition of his employment, pointing to company policy that "overtime shall be equitably divided as far as practicable on a shift among employees." ECF No 54-9 at 12.

Although denial of overtime can constitute an adverse employment action, Plaintiff fails to show that similarly situated Caucasian employees were treated more favorably. In 2011, many overtime hours were allocated to employees with training to work in the space program.[6] ECF No. 54-13 at 61-62. One Caucasian employee and one African-American employee worked in the space program and received more overtime than Plaintiff, while numerous [at least six] Caucasian employees received less overtime. Plaintiff was not trained to work in the space program, and therefore, was not similarly situated to the two employees who worked in that program and received more overtime. Furthermore, two of the top three overtime earning employees were African-American, ECF No. 51-3 at 45, and Plaintiff had more overtime than anyone with training equivalent to his own.

The evidence does not reflect employer favoritism of employees outside Plaintiff's protected class; no reasonable

---

[6] The parties have not described the type of training needed to work in the space program.

jury could conclude that Defendant treated Caucasian employees more favorably than similarly situated African-American employees.  The Court finds Plaintiff fails to establish a prima facie case of racial discrimination under Section 1981.

**IV. CONCLUSION**

    For the above-stated reasons, the Court will grant Defendant's Motion for Summary Judgment.  A separate order will issue.

                                          _____/s/_____
                                          William M. Nickerson
                                          Senior United States District Judge

DATED: November 5, 2015